**AMERICAN SAFETY EQUIPMENT CORP., Plaintiff,**

v.

**HICKOK MANUFACTURING CO., Inc., Defendant.**

**AMERICAN SAFETY EQUIPMENT CORP., Plaintiff,**

v.

**J. P. MAGUIRE & CO., Inc., a Delaware Corporation, Defendant.**

**Nos. 66 Civ. 3492, 66 Civ. 3754.**

United States District Court
S. D. New York.
July 11, 1967.

William W. Owens, Royall, Koegel, Rogers & Wells, New York City, for plaintiff.

Leo Guzik, Guzik & Boukstein, New York City, for Hickok.

Jules J. L. Hessen, Hahn, Hessen, Margolis & Ryan, New York City, for Maguire.

MOTLEY, District Judge.

Opinion on Plaintiffs' Motion For Preliminary Injunction And Defendants' Motion for Stay

These are two private antitrust actions instituted by the same plaintiff, American Safety Equipment Corp. (ASE), against two different defendants. Hickok Manufacturing Corp. (Hickok) is the primary defendant. The second defendant, J. P. Maguire & Co., Inc. (Maguire), claims to be the assignee of Hickok.

The first action was commenced on October 21, 1966, against Hickok. Jurisdiction is predicated upon the Clayton Act, §§ 4 and 12, (15 U.S.C. §§ 15 and 22) and 28 U.S.C. §§ 1331 and 2201. The claim is that a fifteen year License Agreement entered into in 1963 between ASE and Hickok, and extended in 1964 to sixteen years, violates the antitrust laws of the United States. The relief sought is judgment declaring: 1) the License Agreement illegal and void in its entirety *ab initio;* and 2) that ASE has no liability to Hickok under the License Agreement, either for royalties for the period prior to the filing of the complaint or for royalties which, by the terms of the Agreement, may have accrued thereafter. ASE, according to the complaint, is a corporation duly organized and existing under New York law with its principal

place of business in the Southern District of New York. ASE is engaged, *inter alia,* in the manufacture and distribution, in interstate and foreign commerce, of automobile safety seat belts and other safety protective devices, accessories and equipment.

Hickok is engaged in the business, *inter alia,* of manufacturing automobile safety seat belts and components thereof as well as items of wearing apparel, apparel accessories, and gift sets, and in the distribution of said items in interstate and foreign commerce.

On August 28, 1963, Hickok entered into two separate agreements with ASE. One was a Manufacturing Agreement which provided, *inter alia,* that Hickok would manufacture for and sell to ASE certain safety seat belts and/or pertinent parts or accessories thereof of a special type and construction for ASE's particular use. The second agreement was a License Agreement. This latter Agreement provided, in part, that Hickok would grant to ASE the exclusive right to use Hickok's trademarks and trade name in connection with the advertising, promotion, marketing and sale of safety protective devices and accessories. In return for such license, ASE agreed to pay Hickok certain royalties as set forth in the License Agreement.

Plaintiff claims the License Agreement violates the antitrust laws for two reasons: 1) it constitutes an illegal attempt on the part of Hickok to unlawfully extend the monopoly position and privileges derived by it from its ownership of the Hickok trademark; and 2) it unreasonably restrains the interstate and foreign commerce of the United States by imposing unreasonable and illegal restrictions upon the business of plaintiff.

The first provision of the License Agreement which ASE attacks requires it to pay royalties to Hickok upon all safety protective devices sold by plaintiff "whether or not sold under the Hickok trademark or other trademarks or without trademark".

The next provision which ASE deems unlawful prohibits it from granting any sublicenses for the sale, within the United States, of "safety protective devices" and "accessories" when sold under the Hickok trademark. The provision further permits the granting of sublicenses with respect to the sale of products outside the United States only upon prior written approval of Hickok and then only to such persons as "shall not be a competitor of Hickok or any of its licensees with respect to any products sold or dealt with by said proposed sublicensee."

The third provision alleged to violate the Sherman Act prohibits ASE from engaging in the business of "manufacturing, selling or dealing with any items or types of items of wearing apparel, apparel accessories and gift sets, other than sets related to transportation", even though the Hickok trademark is not utilized in connection therewith.

The original term of the License Agreement was for 15 years beginning August 28, 1963. On April 20, 1964, the original License Agreement was amended to extend its life for one additional year.

On November 3, 1966, plaintiff received from Maguire a Demand For Arbitration And Notice of Intention To Arbitrate issues arising under both the Manufacturing Agreement and the License Agreement between ASE and Hickok. Maguire's Notice and Demand alleged that it was the assignee of Hickok under both agreements.

In response to Maguire's Notice and Demand, ASE on November 7, 1966, commenced the second action against Maguire. Jurisdiction was likewise predicated on the Clayton Act, the federal question and declaratory judgment provisions of the Judicial Code. The first claim is the same as that alleged in the *Hickok* case. As to this claim, the relief sought is a declaratory judgment that: 1) the trademark License Agreement and an amendment thereto extending the life of the Agreement from 15 to 16 years, under which Maguire claims as assignee of royalty payments, is in violation of §§ 1 and 2 of the Sherman Act; and 2) ASE has no liability for royalties for the period prior to the filing of the complaint

or thereafter under the License Agreement.

There is no claim that the Manufacturing Agreement is illegal.

The complaint then alleges that ASE's Sherman Act claims present questions of interpretation of the antitrust laws of the United States which are within the exclusive jurisdiction of this court.

A second count in the complaint claims that if Maguire is allowed to pursue the arbitration proceedings, ASE will suffer irreparable injury. The relevant allegation is that the arbitration proceeding may result in a substantial award in favor of Maguire, notwithstanding the fact that the License Agreement is illegal, invalid and unenforceable. The relief sought as to the second count is that arbitration be permanently enjoined.

A third count in the complaint alleges that the License Agreement provides that no assignment could be made by either party without the consent or approval of the other. ASE claims that Hickok had not notified ASE of any assignment or sought its approval of same. Therefore, says ASE, Maguire has not succeeded to the rights of Hickok, including the right to require arbitration by ASE. As to this third count, the prayer for relief is also that arbitration demanded by Maguire be permanently enjoined.

Defendant Maguire is alleged to be a Delaware corporation with offices in New York City and in the Southern District of New York. Maguire claims that: 1) from August 28, 1963 to February 1, 1965, Hickok assigned to it over $10,000,-000 due from ASE on invoices for goods sold and delivered by Hickok to ASE and that these sales and shipments were made pursuant to the Manufacturing Agreement; 2) Hickok also assigned to Maguire $250,000 which ASE was required to pay to Hickok under the License Agreement; 3) during the period mentioned, August 28, 1963, to February 1, 1965, assignments were handled on a "non-notification" basis pursuant to which ASE need not have been formally notified of the assignments but was in fact so notified; 4) on February 1, 1965, the assignments were changed to a "notification" basis; 5) ASE never made any objections to such assignments prior to suit; 6) on October 20, 1966, ASE notified Maguire by letter of its intention to make claims against Hickok under both the Manufacturing Agreement and the License Agreement and for the first time repudiated its obligations under these agreements.

ASE advised the court that on November 10, 1966, it commenced a proceeding in the Supreme Court, New York County, against Maguire to stay arbitration under both the Manufacturing Agreement and the License Agreement. On the same day, ASE gave notice to Maguire of its intention to seek a stay of arbitration in the action pending in this court against Maguire.

Accordingly, on November 18, 1966, ASE did move for a preliminary injunction enjoining Maguire from "continuing, pursuing, or in any way taking part in arbitration proceedings instituted" by it on November 3, 1966, with regard to any claims arising out of the 1963 License Agreement. The grounds for this motion were that irreparable injury would result to plaintiff if such relief were denied, notwithstanding the fact that the 1963 License Agreement is illegal, invalid, and unenforceable.

On December 30, 1966, Hickok demanded arbitration with ASE under the Manufacturing Agreement. In reply, ASE conceded Hickok's right to arbitrate and has advised the court that such arbitration is imminent.

On January 9, 1967, Maguire moved pursuant to Sections 2, 3, 4 and 6 of the Arbitration Act (9 U.S.C. §§ 2, 3, 4 and 6) for an order: 1) staying the instant action and all proceedings in connection therewith until arbitration has taken place in accordance with the written provisions for arbitration contained in the Manufacturing Agreement between Hickok and ASE and the License Agreement in dispute here; 2) directing ASE to proceed to arbitration; and 3) denying ASE's motion for a preliminary injunc-

tion enjoining Maguire from arbitrating its claims against ASE arising under the License Agreement. The grounds of Maguire's motion are that the controversy between ASE and Maguire are subject to arbitration pursuant to valid, irrevocable, and enforceable arbitration agreements.

Claiming that both defendants seek to arbitrate the same issue under the Manufacturing Agreement, ASE advised the court that although it does not concede Maguire's right to arbitration under that Agreement, it is willing to permit Maguire to participate in the same arbitration with Hickok. It should be noted, again, that ASE never claimed in these actions that the Manufacturing Agreement violates the antitrust laws. However, ASE's opposition to arbitration under the License Agreement because it believes that Agreement invalid under the Sherman Act remains unchanged.

On January 22, 1967, Hickok served on ASE a Demand and Notice of arbitration under the License Agreement.

ASE thereupon filed on January 27, 1967, in its action against Hickok which had been pending since October 1966, a motion for preliminary injunction. ASE thereby sought to enjoin Hickok from proceeding with arbitration under the License Agreement on the same grounds alleged in its motion for such relief against Maguire.

On February 1, 1967, Hickok also moved for an order pursuant to the Arbitration Act, Title 9 U.S.C., directing ASE to proceed to arbitration as to all disputes arising out of the License Agreement including the validity of that agreement. In the alternative, Hickok sought: 1) a ruling (in the event the court should hold the License Agreement not subject to arbitration) that the License Agreement is valid as a matter of law and not violative of the Sherman Act, and an order directing arbitration of other issues; 2) a ruling that paragraphs 27 and 28 of the License Agreement, if invalid, are severable and an order directing arbitration of other issues; 3) if the court holds as to Hickok's motion

that it cannot determine the issue of validity of the License Agreement on such motion, it should order an immediate trial of the issue and that the final determination of Hickok's motion be held in abeyance pending the outcome of such trial; and 4) an order staying ASE from instituting any proceeding with respect to any dispute arising under the Agreement until arbitration and award thereon. The grounds of this motion as in the similar Maguire motion were that the disputes and controversies between ASE and Hickok are subject to arbitration pursuant to the arbitration clause of the License Agreement between the parties.

Neither Maguire nor Hickok have filed answers to the complaints in this court for alleged violations of the Sherman Act. Maguire has not yet replied to the state court action for stay of arbitration instituted against it by ASE.

Hickok, in supporting its motion for stay denied that the challenged provisions of the License Agreement violate the antitrust laws. In addition, Hickok raised by brief and affidavit a number of defenses, including: 1) additional consideration in the form of patents received by ASE justifying payment of royalties on all sales; 2) an irrevocable disclaimer by Hickok of that contested provision of the License Agreement restricting ASE's right to compete with Hickok in the sale of "safety protective devices" or "accessories", except in the apparel field, and 3) estoppel on the ground that ASE has retained the benefits it received under the License Agreement.

The arbitration clauses in the Manufacturing Agreement and the License Agreement are identical and provide as follows:

"All controversies, disputes and claims of whatsoever nature and description arising out of, or relating to, this Agreement and the performance or breach thereof, shall be settled by arbitration in New York State in accordance with the laws of the State of New York and the rules then obtaining of the American Arbitration Association. Any award rendered in such ar-

bitration shall be final and binding upon the parties and judgment may be rendered thereon by any court having jurisdiction.

In addition, each agreement contains the following paragraph:

"If any part of this Agreement is determined to be invalid, illegal or unenforceable, such determination shall not affect the validity, legality or enforceability of any other parts of this Agreement if unaffected thereby and the remaining parts of this Agreement shall be enforced as if such invalid, illegal or unenforceable parts were not contained herein.

On February 7, 1967, ASE's motions for preliminary injunction in both cases and defendants' motions for a stay under the Arbitration Act in both cases came on for hearing. The motions were argued together and the cases are consolidated for the purposes of these motions and decision thereon.

The court grants the motion of Hickok and Maguire for a stay of these actions under the Arbitration Act, 9 U.S.C. § 3, and denies ASE's motions for preliminary injunction in each case staying arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), affirming 360 F.2d 315 (2d Cir. 1966); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L. Ed.2d 618 (1960), dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

■ This court has jurisdiction of these actions which have been brought to have declared violative of the Sherman Act certain provisions of a License Agreement. 15 U.S.C. §§ 15, 22 and 28 U.S.C. §§ 1331 and 2201.

The arbitration agreement sought to be enforced by Hickok and Maguire is "[a] written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * *." 9 U.S.C. § 2.

Such a provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

There is no claim here that the arbitration clause is invalid, revocable or unenforceable. Quite the contrary; ASE advises the court that it is proceeding to arbitration with Hickok and is willing to do so with Maguire under the arbitration clause contained in the Manufacturing Agreement and that such arbitration is imminent. ASE further advises the court that it is willing to proceed to arbitration under a similar clause in the License Agreement if this court should hold the challenged provisions of that Agreement legally binding when tested against the prohibitions of the antitrust laws. This, consequently, is not a case in which arbitration is sought to be avoided on the ground of fraud or other legal infirmity in the making of the arbitration agreement.

This is a case in which the claim is that the illegality under the Sherman Act of certain provisions of the License Agreement renders the entire contract void ab initio and, therefore, unenforceable, leaving naught for the arbitrators. ASE claims that the question of the legality of the contract under the Sherman Act is a question for this court and not the arbitrators. ASE claims further that to refer this legal question to arbitrators, who because of their personal business views might choose to ignore the federal antitrust proscriptions and give effect to a contract violative of such prohibitions, is contrary to public policy.

Hickok and Maguire contend that the legal question raised by ASE is for the arbitrators.

There is no evidence in this case that the contracting parties intended to withhold the legal issue posed by ASE from arbitration or that ASE was not free to so contract. Prima Paint Corp. v. Flood Conklin Mfg. Co., supra.

■ The arbitration clause in the License Agreement is broad enough to encompass legal issues. Thus, the legal is-

sue which ASE makes the basis of a suit is an "issue referable to arbitration upon an agreement in writing for such arbitration." 9 U.S.C. § 3. This court, therefore, is required by the Arbitration Act to stay this action pending arbitration of the projected legal issue. 9 U.S.C. § 3.

The foregoing ruling applies, in addition, to ASE's claim of invalidity of Hickok's assignment of the License Agreement to Maguire because of failure to notify ASE of such assignment and to secure its approval of same. This conclusion is further applicable to ASE's claim that the assignment was not broad enough to carry with it all rights under the License Agreement, including the right to require ASE to arbitrate with Maguire.

ASE is willing to permit Maguire to participate in arbitration proceedings instituted by Hickok under the Manufacturing Agreement. There is, therefore, no reason, at this time, for the court compulsion requested by Maguire compelling ASE to proceed to arbitration under the Manufacturing Agreement. 9 U.S.C. § 4. There is also no necessity now to rule on the question whether this court's pendent jurisdiction is sufficient for the granting of the relief requested by Maguire with respect to the Manufacturing Agreement.[1]

There appears to be no public policy bar to permitting parties to a contract to agree that legal issues arising in connection therewith, including issues arising under federal law, shall be referred to arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra; Robert Lawrence v. Devonshire Fabrics, Inc.,

supra. The fact that these suits are predicated on a federal statutory cause of action is not alone enough to preclude arbitration of the controversy. Wilko v. Swan, 201 F.2d 439 (2d Cir. 1953), reversed on other grounds, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). It must at least appear that such an arbitration agreement is void under the express provisions of the federal act itself, Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), before the issue arising under a federal statute must be determined by the court upon the election of a party to the agreement. "The United States Arbitration Act establishes by statute the desirability of arbitration as an alternative to the complications of litigation. The reports of both Houses on that Act stress the need for avoiding the delay and expense of litigation, and practice under its terms raises hope for its usefulness both in controversies based on statutes or on standards otherwise created." Wilko v. Swan, supra, at 431–432, 74 S.Ct. at 185 (ftn citation of cases omitted).

In Fanchon & Marco, Inc. v. Paramount Pictures, 107 F.Supp. 532 (S.D.N.Y.1952), relied on by ASE, this court held that the arbitration provision in that contract did not cover the treble damage claim there made under the antitrust laws. Its statement that, "if the arbitration clause did expressly cover a claim under the anti-trust laws its enforceability would be questionable" is, therefore, mere dictum and not controlling in this case (at 548).

An order, therefore, will be entered staying these actions and all proceedings therein pending arbitration under the License Agreement and directing ASE to proceed to arbitration thereunder.

1. ASE claimed there was no diversity of citizenship between it and Maguire since both have their principal places of business in New York City and since ASE did not attack the Manufacturing Agreement as violative of the antitrust laws, ASE claimed there was no federal question jurisdiction. Maguire claimed there was the necessary pendent jurisdiction.